ORIGINAL

1  JEFF S. WESTERMAN (SBN 94559)
   MILBERG WEISS LLP
2  One California Plaza
   300 S. Grand Avenue, Suite 3900
3  Los Angeles, CA 90071-3149
   Telephone: (213) 617-1200
4  Facsimile:  (213) 617-1975
   Email: jwesterman@milbergweiss.com
5

6  PETER SAFIRSTEIN
   ANDREW MORGANTI
7  MILBERG WEISS LLP
   One Pennsylvania Plaza
8  New York, New York 10119
   Telephone: (212) 594-5300
9  Facsimile:  (212) 868-1229
   Email: psafirstein@milbergweiss.com
10    amorganti@milbergweiss.com

11 Attorneys for the Plaintiff and the Class

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION       CV 08        1140

15 LORI BARRETT, individually and on behalf   )   Case No.
   of herself and all others similarly situated, )
16                                              )   **CLASS ACTION COMPLAINT**
                                                )
17              Plaintiff,                      )
                                                )   COMPLAINT FOR VIOLATIONS OF
18      vs.                                     )   THE SHERMAN ANTITRUST ACT 15
                                                )   U.S.C. § 1
19 QANTAS AIRWAYS LIMITED, AIR NEW             )
   ZEALAND LIMITED, and John Does 1 – 10,      )
20                                              )   **JURY TRIAL DEMANDED**
                                                )
21              Defendants.                     )
                                                )
22                                              )

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1
DOCS\427513v1

1    Pursuant to the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all
2  others similarly situated, hereby brings this action for treble damages and injunctive relief under
3  the federal antitrust laws of the United States, Section 1 of the Sherman Antitrust Act of 1890, 15
4  U.S.C. § 1 ("Sherman Act") and Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15
5  U.S.C. §§ 15, 26 ("Clayton Act") against Defendants.  Plaintiff complains and alleges upon
6  information and belief except as to those paragraphs applicable to the named Plaintiff, which are
7  based on personal knowledge, as follows:

8                              **NATURE OF THE ACTION**

9    1.    This action arises from a conspiracy among certain airlines to fix, raise, maintain,
10 and/or stabilize prices for long haul passenger flights ("Passenger Air Transportation") and for
11 fixed fuel surcharges on this transportation ("Fuel Surcharges") between United States and
12 Australia and New Zealand.  Fuel surcharges are fees charged to passengers by airlines
13 purportedly to compensate the airlines for increased fuel costs.  As alleged herein, Defendants
14 agreed to subscribe to the same index to set fuel surcharges despite having different cost
15 structures, including different fuel hedging strategies.

16    2.    Plaintiff, on behalf of all persons and entities that purchased Passenger Air
17 Transportation, to and from the United States, from any of the Defendants and their co-
18 conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period
19 from May 17, 2004 to August 1, 2007 (the "Class Period"), brings this action to recover treble
20 damages and injunctive relief for violations of the United States antitrust laws.

21    3.    This action arises from Defendants colluding with each other to fix, raise,
22 maintain, and/or stabilize prices for passenger fuel surcharges associated with, at least, one
23 segment between the United States and the relevant market.

24    4.    Because of this unlawful conduct and conspiracy, Plaintiff and other members of
25 the Class paid artificially inflated prices for international Passenger Air Transportation and
26 passenger fuel surcharges.  Plaintiff and other members of the Classes purchased those services
27 from a Defendant and have been damaged thereby.

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 1 -
DOCS\427513v1

1    5.    Plaintiff brings this action to recover treble damages and injunctive relief for

2  violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1 pursuant to

3  Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26, and various

4  state consumer protection statutes.

5                              **JURISDICTION AND VENUE**

6    6.    This Complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.

7  §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit,

8  including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff

9  and the members of the Class by reason of Defendants' violations of Section 1 of the Sherman

10  Act, 15 U.S.C. §§ 1. 6.

11    7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

12  1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

13    8.    This Court has *in personam* jurisdiction over each of the Defendants because each

14  was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused

15  injury to persons and entities residing in, located in, or doing business in the Northern District of

16  California and throughout the United States.

17    9.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 22 and 28 U.S.C.

18  § 1391(b), (c), and (d) because during the Class Period many of the Defendants resided,

19  transacted business, were found, or had agents in this district, and because a substantial part of

20  the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected trade

21  and commerce described below has been carried out, in this district.

22                                    **PARTIES**

23    10.    Plaintiff Lori Barrett, a resident of Ontario, Canada, purchased Passenger Air

24  Transportation between United States and Australia directly from a defendant during the class

25  period and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

26    11.    Defendant Qantas Airways Limited ("Qantas") is an Australian company with its

27  principal place of business at Qantas Centre Level 9 Building A 203, Coward Street, Mascot,

28  Australia.  Qantas is engaged in the operation of international and domestic air transportation

1   services, and the provision of time definite freight services. Qantas is also engaged in the sale of

2   international and domestic holiday tours, and associated support activities, including flight

3   training, catering, passenger and ground handling, and engineering and maintenance.

4       12.     Defendant Air New Zealand Limited ("Air New Zealand") is a New Zealand

5   corporation with its principle place of business at House 185 Fanshawe Street, Auckland, New

6   Zealand. Air New Zealand provides air passenger and cargo transport services within New

7   Zealand, as well as to and from Australia, the South West Pacific, Asia, North America and the

8   United Kingdom. It encompasses business units providing engineering and ground handling

9   services. Subsidiaries extend to booking systems, travel wholesaling and retailing services.

10                                  **AGENTS**

11      13.     The acts alleged to have been done by Defendants were authorized, ordered or

12  done by their directors, officers, agents, employees, or representatives while actively engaged in

13  the management of each of the Defendants' affairs.

14                      **THE GOVERNMENT INVESTIGATIONS &**
                        **QANTAS AIRWAYS LTD'S STRATEGIC**
15                      **RELATIONSHIP WITH AN ADMITTED MEMBER OF A CARTEL**

16      14.     On February 14, 2006, Asian, European, and US antirust authorities conducted

17  raids throughout the United States and the world at the offices of the various international

18  airlines. The European Commission stated that "[t]he Commission has reason to believe that the

19  companies concerned may have violated (a European Union) treaty, which prohibits practices

20  such as price fixing."

21      15.     On February 14, 2006, the United States Department of Justice ("DOJ") stated

22  that they were coordinating with the European Commission on searching air carriers' offices and

23  confirmed that searches were carried out in New York, New York; Chicago, Illinois; Miami,

24  Florida; Boca Raton, Florida; San Francisco, California and Long Beach, California. The DOJ

25  confirmed that "it was investigating the possibility of anti-competitive practices in the air cargo

26  industry."

27      16.     During May 2007, at the International Air Transportation Association ("IATA")

28  Cargo Network Service Conference, the United States Federal Bureau of Investigations served

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1            - 3 -
DOCS\427513v1

1  subpoenas on various airlines. FBI agents also interviewed various airline managers at their

2  hotel rooms.

3         17.    On August 1, 2007, the DOJ charged a member of the IATA of colluding with

4  rivals to fix passenger fuel surcharges for flights. The DOJ also announced a $300 million

5  settlement with British Airways and it cited passenger transatlantic routes.

6         18.    In its news release, the DOJ said: "The Department also charged that between

7  August 2004 and February 2006, British Airways engaged in a conspiracy to suppress and

8  eliminate competition by fixing the Fuel Surcharge charged to passengers on long-haul

9  international flights, including flights between the United States and the United Kingdom."

10         19.    The DOJ also focused on transpacific flights to and from the United States, noting

11  that the investigation is "*ongoing.*"

12         20.    On August 13, 2007, Qantas Chief Executive Officer Geoff Dixon announced that

13  Qantas Airways would set aside $40 million to cover a potential fine in the United States as a

14  result of Fuel Surcharges and price fixing in its freight division. In a news release, Dixon was

15  quoted as saying:

16         On 1 August 2007, the U.S. Department of Justice announced that British
       Airways and Korean Air had agreed to plead guilty and pay separate US$300
17         million criminal fines for their roles in *conspiracies to fix prices of passenger
       and cargo flights*. British Airways subsequently announced that US$200
18         million of its fine related to cargo. Based on these developments, a decision
       has been made to make a US$40 million (A$47 million) provision in the
19         2006/07 Financial Accounts.

20         21.    Up until recently, British Airways and Defendant Qantas were in a strategic

21  relationship whereby, amongst other things, British Airways owned millions of shares of Qantas.

22  As British Airways' stated in its regulatory filings to its shareholders:

23         Under the Joint Services Agreement (JSA) there is full strategic, tactical and
       operational co-operation on all of British Airways' and Qantas' flights that
24         serve markets between the United Kingdom/Continental Europe and Southeast
       Asia/Australia. This co-operation continues to strengthen and provides
25         customers with improved flight departure times, routings and value for money,
26         offering the very best of customer service to all passengers… British Airways
       and Qantas continue to co-ordinate sales and marketing activities worldwide
27         and to share all costs and revenues on the JSA routes, giving both companies

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1     - 4 -
DOCS\427513v1

1   an incentive to improve the joint business. (British Airways PLC Form 20-F,
2   July 26, 2005).

3       22.    On February 17, 2006, the New Zealand Commerce Commission notified
4   American Airlines, Inc., that it and its competitors (including British Airways) were under
5   investigation as to whether they entered into an agreement relating to fuel surcharges.

6   **QANTAS AIRWAYS' RELATED CRIMINAL GUILTY PLEA**

7       23.    On November 27, 2007, the DOJ disseminated an information statement lodging
8   an antitrust complaint against Qantas for restraining trade and suppressing competition within the
9   air cargo industry between January 1, 2000 and continuing until at least February 14, 2006, the
10  exact dates being unknown, in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

11      24.    On January 14, 2008, the DOJ filed a Plea Agreement relating to the charges
12  against Qantas. On that same day, Brett Stuart Johnson, general counsel of Qantas, on behalf of
13  Qantas, pled guilty to the charges that Qantas was acting as a member within a cartel to suppress
14  competition within the air cargo industry by fixing various charges. (Qantas Plea Sentencing,
15  Case No. 07-0322, Tr.24:14 (January 14, 2008, D.D.C.)).

16      25.    In addition to pleading guilty, Qantas also agreed to cooperate with the United
17  States in the prosecution of the antitrust and related criminal laws involving the sale of
18  international air cargo transportation services, any other federal investigation resulting there
19  from, and any litigation or other proceeding arising or resulting from any such investigation to
20  which the United States is a party. (Qantas Plea Agreement, at ¶12, and Qantas Plea Sentencing,
21  Tr.22-23:25-8).

22  **TRADE ASSOCIATIONS**

23      26.    The Association of Asia Pacific Airlines ("AAPA") is an association "to serve as
24  a common forum for the articulation of members' views on matters and issues of common
25  interest, to foster close cooperation and to bring about an atmosphere conducive to the
26  stimulation of the travel and tourism industry."

27      27.    AAPA member airlines include Air New Zealand, Nippon Airways, Asiana
28  Airlines, Cathay Pacific Airways, China Airlines, Dragonair, EVA Airways, Garuda Indonesia,

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 5 -
DOCS\427513v1

1 Japan Airlines, Korean Air, Malaysia Airlines, Philippine Airlines, Qantas Airway, Royal Brunei

2 Airlines, Singapore Airlines, Thai Airways International, and Vietnam Airlines.

3      28.    During AAPA conferences, member firms discussed the increasing costs of fuel,

4 passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of

5 fuel. On November 18, 2005, the AAPA also established a resolution between members to

6 address the same.

7      29.    On August 21, 2007, Airline Business reported that several members of the

8 AAPA are currently being investigated for antitrust violations by the cartel authorities in United

9 States, Australia, Canada, South Africa, and New Zealand.

## TRADE AND COMMERCE

11      30.    Throughout the Class Period, there was a continuous and uninterrupted flow of

12 Passenger Air Transportation in international commerce throughout the United States and

13 especially into and out of Chicago, Los Angeles, and New York. Defendants' unlawful

14 activities, as described herein, took place within the flow of commerce to passenger flight

15 customers throughout the world, and had a direct, substantial and reasonably foreseeable effect

16 upon interstate and international commerce in the United States.

17      31.    As a direct, substantial, and reasonably foreseeable effect upon U.S. interstate and

18 international commerce, Defendants have reported in their regulator filings that over a million

19 passengers traveled on their on long-haul direct flights between United States and Australian-

20 New Zealand market destinations.

21      32.    On August 24, 2005, it was reported that Defendant Qantas was going to generate

22 an extra $400 million in extra revenue over the next two years as a result of its latest passenger

23 fuel surcharge adjustment to $75 per segment (up from $70) on long haul flights to North

24 American markets effective September 1, 2005. (*Qantas to rake in $400m from price hike*, Org.

25 Asia-Pacific New Agencies, August 24, 2005).

## CLASS ACTION ALLEGATIONS

27      33.    Plaintiff brings this action on his own behalf and as a class action pursuant to

28 Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1    - 6 -
DOCS\427513v1

1

2

3

4

5

6

> All individuals or entities (excluding governmental entities, Defendants, and their parents, predecessors, subsidiaries, affiliates, and their co-conspirators) who purchased passenger air transportation, for long haul flights that included at least one flight segment between the United States and Australia or New Zealand and paid a fuel surcharge on their tickets directly from the Defendant and their co-conspirators or any predecessor, subsidiary, or affiliate or business partner of each, at any time during the period from May 17, 2004 to August 2007.

7

8

9

10

11

34.     Because such information is in the exclusive control of Defendants, Plaintiff does not know the exact number of members of the Class.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds-of-thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all Class members is impracticable.

12

13

35.     There are questions of law or fact common to the Class, which predominate over individual issues, including:

14

15

16

(a)     Whether Defendants engaged in a combination or conspiracy with their coconspirators to fix, raise, maintain, and/or stabilize Passenger Air Transportation and Fuel Surcharges on such flight segments;

17

18

(b)     The duration of the conspiracy alleged in this Complaint, and the nature and character of the acts performed by Defendants in furtherance of the conspiracies;

19

(c)     Whether Defendants violated Section 1 of the Sherman Act;

20

(d)     Whether Defendants were unjustly enriched;

21

22

(e)     The effect of Defendants' conspiracy caused injury to the businesses or property of Plaintiff and the members of the Class;

23

24

(f)     Whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

25

(g)     Whether damages can be shown on a class-wide basis; and

26

27

(h)     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                    - 7 -
DOCS\427513v1

36.    Plaintiff will fairly and adequately protect the interests of the Class and her interests are coincident with and not antagonistic to those other members of the Class. Plaintiff is represented by counsel competent and experienced in the prosecution of complex litigation, including antitrust class action litigation.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

38.    The Class is readily definable and one for which records should exist in the files of Defendants.

## DEFENDANTS' DIFFERENT FUEL HEDGING STRATEGIES UNDERSCORES THEIR ANTICOMPETITIVE CONDUCT OF ADOPTING AND ADJUSTING FUEL SURCHARGES IN TANDEM

39.    As alleged herein, Defendants agreed to subscribe to the same index to set fuel surcharges despite having different cost structures, including different fuel hedging strategies.

40.    Each Defendant adopted its own fuel hedging strategies, yet, by adopting and adjusting their passenger fuel surcharges in tandem each acted consistent with a cartel-like agreement between them.

41.    During the Class Period, Defendants Qantas and Air New Zealand engaged different methods to hedge fuel costs and fuel consumption management techniques but adopted and adjusted their fuel surcharges and fares on long haul flights in tandem.

## DEFENDANTS' CONCERTED INCREASES TO FARES AND FUEL SURCHARGES

42.    Defendants were aware that their imposition of fuel surcharges and other surcharges would not be successful if their supposed competitors did not join them; otherwise, customers would be free to seek out lower prices. For this reason, Defendants entered into agreements to adopt and adjust passenger fuel surcharges at the same times and following the scale.

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 8 -
DOCS\427513v1

43.     For example, during October 2003, American Airlines adopted a $10 passenger fuel surcharge on its flights. After no competitor followed-suit, American Airlines was forced to drop the passenger fuel surcharge. Likewise, during May 2003, SA Airways, announced that it was forced to drop passenger fuel surcharges on flights between South Africa and the United Kingdom because British Airways, plc, a direct-competitor on that route, would not follow-suit.

44.     During IATA conferences, member firms discussed the increasing costs of fuel, passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of fuel.

45.     After a March 17 and 18, 2003, IATA meeting in Geneva, Switzerland, where Defendants attended,  "IATA held talks ...and decided to raise the regular fares of member airlines by 3 per cent in principle."

46.     During September 2003, the Australian Competition and Consumer Commission rejected Defendants Qantas and Air New Zealand's bid to form a strategic alliance, which included a purchase of 22.5% of Air New Zealand by Qantas. Due to concerns relating to competition, Qantas was forced to sell its financial interests in New Zealand. (*Air Fares on the move*, Daily Telegraph, March 21, 2003).

47.     During April 2004, Continental Airways adopted passenger fuel surcharges on long haul flights. During early May 2004, British Airways, which plead guilty to criminal charges of acting in a cartel to fix and artificially inflate air fare and passenger fuel surcharges, adopted passenger fuel surcharges. (*Flight International*, Briefing, May 18, 2004).

48.     On May 11, 2004, Qantas announced its intention to adopt a $15 passenger fuel surcharge per segment on long haul flights effective May 17, 2004. It was reported that the last time Qantas' fuel surcharges were enforced previous to 2004 was in late November 2000 when jet fuel prices rose above $43 a barrel. (*Qantas to Introduce Fuel Surcharge*, Australian Co. News Bites, May 11, 2004).

49.     On May 12, 2004, Air New Zealand announced its intentions to follow Qantas' adoption of passenger fuel surcharge, but charged $20 per segment on long haul flights effective

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 9 -
DOCS\427513v1

1    May 17, 2004.   In addition, British Airways announced its intention to adopt passenger fuel

2    surcharges of $A12.85 per segment on long haul flights during this same week too.

3         50.    On June 6, 2004, BBC News reported that at the IATA Meeting, which

4    Defendants' representatives attended, participants recommended price increases on base fares for

5    international flights. (*Air passengers pay for oil hike*, BBC News, June 6, 2004).

6         51.    On August 20, 2004, Qantas announced its intention to adjust passenger fuel

7    surcharges to $22 per segment on long haul flights effective August 26, 2004.   On August 26,

8    2004, Air New Zealand announced its intentions to follow Qantas' adjusted passenger fuel

9    surcharge, but charged $26 per segment on long haul flights effective September 2, 2004.

10         52.    On March 21, 2005, Qantas announced that it and British Airways would jointly

11    offer new pricing schedules to their transpacific long-haul flights effective April 26, 2005.

12         53.    On April 8, 2005, following an April 4, 2005 IATA meeting in New York City

13    attended by Defendants, Qantas announced its intention to adjust passenger fuel surcharges to

14    $60 per segment on long haul flights effective April 20, 2005.   On April 6, 2005, Air New

15    Zealand announced its intentions to follow Qantas' adjusted passenger fuel surcharge to $N52

16    per segment (up from $N40) on long haul flights effective April 12, 2005.

17         54.    At the same time as Defendants Qantas and Air New Zealand announced their

18    intentions to adjust fuel surcharges for April 2005, British Airways and Virgin Atlantic also

19    announced the same.

20         55.    On August 17, 2005, Air New Zealand announced its intentions to adjust

21    passenger fuel surcharges to $92 per segment (up from $72) on long haul flights to North

22    American markets effective September 1, 2005.   Immediately after the announcement, Qantas

23    chief executive Geoff Dixon was reported by The Age as saying that Qantas would likely adjust

24    fuel surcharges too.   On August 23, 2005, Qantas announced its intentions to follow Air New

25    Zealand's lead and adjust passenger fuel surcharges to $75 per segment (up from $60) on long

26    haul flights to North American markets effective September 2, 2005. (*Australia's Qantas again*

27    *hikes fuel surcharge*, Agence France Presse English Wire, August 23, 2005).

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 10 -
DOCS\427513v1

56.    On August 29, 2005, Air New Zealand reported that for the year ending June 30, 2005, it realized gains of $103 million from hedging aviation fuel.

57.    On April 20, 2006, Air New Zealand announced its intention to adjust long haul flight base fares by 10% effective May 1, 2006.

58.    On April 26, 2006, Air New Zealand announced its intention to adjust passenger fuel surcharges per segment effective May 15, 2006.  On April 26, 2006, Qantas announced its intention to adjust passenger fuel surcharges to $98 per segment for long haul flights effective May 5, 2006.

59.    During a June 5, 2006 IATA meeting in Paris, France, IATA GEO Giovanni Bisignani, applauded the air carrier attendees for using passenger fuel surcharges to combat high oil prices. (*Concerns Over Industry Performance Grow at IATA AGM*, Aviation Daily, June 6, 2006).

60.    On August 18, 2006, Qantas announced its intention to adjust passenger fuel surcharges to $145 for long haul flights to North American markets effective August 31, 2006.

61.    On October 19, 2006, Qantas announced its intention to reduce passenger fuel surcharges to $133 on long haul flights to North American markets effective October 24, 2006.

62.    On August 1, 2007, Qantas announced its intention to adjust passenger fuel surcharges to $145 per segment (up from $133) on long haul flights effective August 9, 2007.

63.    But for Defendants' anti-competitive conduct, Defendants would have been unable to increase the prices of their fares and fuel surcharges to the extent they did so during the Class Period.

**FRAUDULENT CONCEALMENT**

64.    Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and members of the Class.

65.    Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until August 2007.  Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants and their co-conspirators

1  conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

2  furtherance thereof, and fraudulently concealed their activities through various other means and

3  methods designed to avoid detection. The conspiracy was by its nature self-concealing.

4      66.    Only on or about August 1, 2007, when the DOJ announced its antitrust charges

5  against British Airways and Korean Air regarding their membership of cartels for the purpose of

6  fixing the price of passenger fuel surcharges, was the existence of the fuel surcharge conspiracies

7  disclosed to the public.

8      67.    Plaintiff and the members of the Class could not have discovered the unlawful

9  conduct at an earlier date through the exercise of reasonable diligence because of Defendants'

10  active and purposeful concealment of its unlawful activities.

11      68.    Through her due diligence, Plaintiff has discovered that Defendants Qantas and

12  Air New Zealand's adoption and adjustments to fares and fuel surcharges were in tandem to

13  British Airways. British Airways had pled guilty to criminal price-fixing charges for being a

14  member of a cartel to artificially inflate fares and fuel surcharges.

15      69.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

16  and the members of Class assert the tolling of any applicable statute of limitations affecting the

17  rights of action of Plaintiff and the other members of the Class.

18  **COUNT I**

19  **VIOLATIONS OF THE SHERMAN ACT**

20      70.    Plaintiff incorporates by reference as if fully set forth herein the allegations

21  contained in the preceding paragraphs of this Complaint. During the relevant periods,

22  Defendants and their co-conspirators engaged in a continuing agreement, understanding, and

23  conspiracy in restraint of trade to implement, artificially raise, fix, maintain, and/or stabilize the

24  prices of fares and passenger fuel surcharges between May 14, 2004 and August 1, 2007, in

25  violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

26      71.    Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the

27  Class seek injunctive relief, and treble damages, and any such other relief that the Court deems

28  necessary and appropriate.

72.     In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of base fares and related passenger fuel surcharges.

73.     During the Class Periods, Plaintiff and members of the Class purchased base fares and related passenger fuel surcharges directly from Defendants and their co-conspirators (or their respective agents, predecessors, subsidiaries, affiliates, and/or business partners).

74.     The illegal combination and conspiracy alleged herein had the following effects, among others:

        (a)     price competition in the pricing of base fares and related passenger fuel surcharges, and, consequently, the prices of which has been restrained, suppressed, and/or eliminated;

        (b)     prices charged by Defendants for base fares and related passenger fuel surcharges were fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

        (c)     prices paid by Plaintiff and members of the Class for base fares and related passenger fuel surcharges charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels by the fixing of prices of base fares and passenger fuel surcharges; and

        (d)     Defendants refused to engage in price competition for passenger fuel surcharges.

75.     Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

76.     During the Class Periods, Defendants sold base fares for travel between United States and Japan in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such services across state boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States.

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 13 -
DOCS\427513v1

1    77.    Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the

2  Class seek injunctive relief, and treble damages, and any such other relief that the Court deems

3  necessary and appropriate.

4    78.    Plaintiff and members of the Class have been required to pay more for base fares

5  and related passenger fuel surcharges in the United States than they would have paid in a

6  competitive marketplace absent Defendants' price-fixing cartel.

7    79.    During the Class Periods, Defendants' base fares and related passenger fuel

8  surcharges conspiracy as described herein caused Plaintiff and the members of the Class to pay

9  artificially inflated prices. As a result, Plaintiff and the members of the Class have been injured

10 and damaged in their business and property in an amount to be determined according to proof.

11    80.    As a direct and proximate result of Defendants' illegal conspiracy, Plaintiff and

12 the members of the Class have been injured and financially damaged in their respective

13 businesses and property, in that they have paid artificially inflated prices during the Class Period

14 that they would not have paid in the absence of the illegal conspiracy.

15    **WHEREFORE**, Plaintiff and the Class request as follows:

16    A.    The Court determine that this action may be maintained as a class action under

17 Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

18    B.    The Court adjudge and decree that the contract, combination and conspiracy

19 alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman

20 Act;

21    C.    Judgment be entered against Defendants, jointly and severally, and in favor of

22 Plaintiff and the Class for damages as allowed by law as determined to have been sustained by

23 them;

24    D.    Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and

25 transferees, and their respective officers, directors, agents and employees, and all other persons

26 acting or claiming to act on behalf of Defendants or in concert with them, be permanently

27 enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or

28 renewing the combinations, conspiracy, agreement, understanding or concert of action, or

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1        - 14 -
DOCS\427513v1

1  adopting any practice, plan, program or design having a similar purpose or effect in restraining

2  competition;

3      E.    The Court award Plaintiff and the Class attorneys' fees and costs, and pre-

4  judgment and post-judgment interest as permitted by law; and

5      F.    The Court award Plaintiff and the Class such other and further relief as may be

6  necessary and appropriate.

**JURY TRIAL DEMAND**

7

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

8

of the claims asserted in this Complaint so triable.

9

DATED: February 26, 2008                      MILBERG WEISS LLP

10                                            JEFF S. WESTERMAN

11

12

JEFF S. WESTERMAN

13

One California Plaza

14                                            300 S. Grand Avenue, Suite 3900
                                              Los Angeles, CA 90071-3149
15                                            Telephone: (213) 617-1200
                                              Facsimile: (213) 617-1975
16                                            Email: jwesterman@milbergweiss.com

17                                            MILBERG WEISS LLP
                                              PETER SAFIRSTEIN
18                                            ANDREW MORGANTI
                                              One Pennsylvania Plaza
19                                            New York, NY  10119-0165
                                              Telephone: (212) 594-5300
20                                            Facsimile: (212) 868-1229
                                              Email:  psafirstein@milbergweiss.com
21                                                      amorganti@milbergweiss.com

22                                            Attorneys for the Plaintiff and the Class

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 15 -
DOCS\427513v1

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| LORI BARRETT, individually and on behalf of all others similarly situated, | QANTAS AIRWAYS LIMITED, AIR NEW ZEALAND LIMITED, and John Does 1 – 10, |

**(b)** County of Residence of First Listed Plaintiff  Ontario, Canada
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

MILBERG WEISS LLP, JEFF S. WESTERMAN (SBN 94559)
One California Plaza, 300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071-3149
(213) 617-1200

Attorneys (If Known)

EMC   ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [X] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [X] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [X] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Act 15 USC Section 1

Brief description of cause:
Price Fixing

## VII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:  JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".  CV 07-5634; CV 07-5821; CV 07-6219; CV 07-6417; CV 08-0339

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

[X] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| February 26, 2008 | Jeff S. Westerman /SSF |

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

E-filing

LORI BARRETT, individually and on behalf of all others similarly situated,

v.

QANTAS AIRWAYS LIMITED, AIR NEW ZEALAND LIMITED, and John Does 1 – 10,

TO: (Name and address of defendant)

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

EMC

CV 08 -1140

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MILBERG WEISS LLP
JEFF S. WESTERMAN
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071-3149

an answer to the complaint which is herewith served upon you, within  20  days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

FEB 2 6 2008

Richard W. Wieking

CLERK                                                    DATE_____

Helen L. Almacen

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and Complaint was made by me [1] | DATE |
| Name of SERVER | TITLE |

*Check one box below to indicate appropriate method of service*

☐     Served Personally upon the Defendant. Place where served:

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐     Returned unexecuted:

☐     Other *(specify):*

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
              Date                                     Signature of Server

                                                 _____
                                                 Address of Server

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure